Good morning, Your Honor, and may it please the Court. There are three issues in front of this Court today on appeal. First, whether the District Court improperly dismissed Mr. Richardson's disability claims for damages at the Motion to Dismiss stage. Second, whether the District Court improperly dismissed Mr. Richardson's disability claims for injunctive relief at the Summary Judgment stage. And third, whether the District Court improperly dismissed Mr. Richardson's ARLUPA claims also at the Summary Judgment stage. I'd like to start where the District Court started, with Mr. District Court held that Mr. Richardson's damages claims under the ADA could not go forward because Title II of the ADA does not abrogate state sovereign immunity where there is no companion constitutional violation. That holding is flatly contradicted by the Supreme Court's precedent in United States v. Georgia and this Court's precedent in Constance. The United States Supreme Court laid out in United States v. Georgia a three-part test to determine in the prison context whether state sovereign immunity was abrogated. First, there needs to be a showing of what behavior from the state violates the ADA. Second, there needs to be a determination by the District Court of whether there is a companion constitutional violation, whether there was behavior that also violated the 14th Amendment. And then third, if there is no companion constitutional violation, the District Court must then move on to step three and analyze whether, absent a companion constitutional violation, Title II of the ADA nevertheless abrogates state sovereign immunity in the present context. The District Court here did not move on to step three and for that reason alone, this Court could reverse and remand. Counsel, if I could interrupt you there, I appreciate that that's the order you're going in because that's the first, you know, decision that is subject to appeal. But whether it's for money damages or injunctive relief, the basic liability facts are the same, aren't they? I mean, the basic claim is the same for disability. I think that's more or less right, Your Honor. The disability claims relate to Mr. Richardson's degenerative eye condition and his hearing loss and the lack of provision of a condition for both of those. You know, there are facts as to his claims for injunctive relief since that got to summary judgment and there haven't been as many facts developed as to how the facility might have But yes, Your Honor is correct that the genesis of the claims is more or less the same, although the facts temporally are a little bit different based on whether it's retrospective damages claims or a forward-looking injunctive claim. So help me here. So let's assume, and this is just for, you know, to get my bearings straight, not to result. Let's assume I found or we found that the district court did not err in showing that Mr. Richardson did not establish a substantial burden on his religious activities. Would that finding apply as well to the money damages claim? Well, Mr. Richardson, well, Your Honor, Mr. Richardson, I don't believe on appeal, has a money damages claim for his loop for the our loop of violations. He's solely seeking injunctive relief for his religious. I'm sorry, you're I mixed them up. I'm sorry. Yeah, but as to the as to the ADA, as to the ADA injunctive versus damages question, right? I think if this court were to hold that Mr. Richardson didn't establish a valid claim or injunctive relief on his ADA claims, you would still have to send it back to the district court to answer the question of whether title to aggregate state sovereign immunity so that Mr. Richardson could develop facts, seek discovery as to the damages claims. He was only able to put forth facts and seek discovery as to whether the facility was ongoing violating his ADA rights, but he didn't have the opportunity to establish facts. He only had the opportunity to plead that they retrospectively violated his rights under the ADA and that he was entitled to to follow up on that. If we were to find that his rights were not violated at all under the ADA, there would be no need to remand correct on the ADA questions, both damages and injunctive relief. That's correct. There would still be the loop. Yes. And so on the ADA claim, what what is his denial that he's primarily complaining about? I can't really grab hold of what that might be. In Mr. Richardson's particular complaint, which is at JA 11 to 60, and also in his declarations that are attached to his motion for appointment of counsel and his additional documents that he filed around the time of summary judgment, he points to two primary disability claims. He is a qualified person with a disability because he both has a degenerative hearing condition and a degenerative eye condition that has rendered him legally deaf and blind, and progressively so. His eyes get worse and his hearing gets worse. And he has alleged and put forth some facts to demonstrate that he has been denied access to program services or activities in the facility, including communication, library services, emergency services. Now, my friend on the other side has put forth facts as to how they've attempted to accommodate those disabilities over time. And we have no quarrel with the idea that they have sometimes accommodated Mr. Richardson, but his damages claims are premised on the idea that there were times where he was not accommodated and therefore he was denied program services and his injunctive claims are premised on the idea that he currently is being denied access to program services or activities. But he has to have been denied, if he was, because of or as a motivating factor because of his disability. Where is that in the record, that he was denied accommodations and his disability was a motivating factor for that? Well, Your Honor, under the ADA, when there is a denial, when a plaintiff makes a confession showing that they have a disability and that they cannot access program services or activities, the denial of a reasonable accommodation qualifies under the ADA as a denial because of disability or the motivating factor as a result of disability. You could imagine, for example, a quintessential ADA claim where you had a plaintiff in a wheelchair and there were steps in a facility and they couldn't get up those steps and they were seeking injunctive relief for the facility to build a ramp. It would be very difficult to say, well, you're being denied program services or disability. But in fact, it is because of their disability they cannot get up the steps or they can't have meaningful access to program services or activities without the accommodation. The same is true for Mr. Richardson. He's asking for very simple accommodations, an increased level of prescriptive lenses, which the facility has provided some prescriptive lenses in the past, and more regular ASL interpretation, particularly when it comes to court documents and engaging with the court process. Counsel, that last comment you made is the way I kind of read what he filed in response to the summary judgment motion. It seems to me the strong flavor of it is assistance in the prosecution of this case in legal matters. I wonder if that's an ADA claim as much as it is a right to courts or right to access to courts claim, which he initially filed but which was dismissed and which dismissal hasn't been appealed. So I just wonder, you know, even accepting what he says in his filings, if they relate to access to courts rather than traditional programs and activities, is that an ADA issue? I think it is, Your Honor. You're correct that he pled both, and I think he might have been able to proceed under his access to court claims. But here, I think it's best to think of his access to court claims as access to the services in the prison that would allow him to engage with the legal process of the library, the different computer terminals, different written services. Those are all services provided to non-disabled people inside the prisons. And even though the result is that he's denied access to the court, the reason that he's denied is because of his disability and the lack of accommodations. So to follow up on that, does the plaintiff have to make a showing of how the lack of those services actually denied access to the courts? Because it seems to me, on the face of this record, he's doing a pretty good job of accessing the courts. Well, two responses, Your Honor. As an initial matter, he doesn't need to show that he was denied access to programs, services, or activities in the facility. For example, the ability to read in the library, and that the facility denied him reasonable accommodations. But I also think that the pieces of the record that show him prosecuting his case can be read in a couple of different ways. Mr. Richardson has put forward in the filings surrounding summary judgment that he often has other people, other prisoners assist him with the filings, and there are a variety of different ways he attempts to cope with his disability. And the standard under the ADA really isn't whether he can access the services. It's whether he has meaningful access to the services. I think Tennessee v. Lane is instructive on that. The plaintiffs in Tennessee v. Lane, which was an access to the courts issue, were able to access the court by crawling up the stairs. But that's not meaningful access. And here what Mr. Richardson seeks is meaningful access. If I could turn just briefly back to the motion to dismiss question as far as whether Title II abrogates state sovereign immunity, I would just urge this court to follow the preceding process. Title II does abrogate state sovereign immunity in the prison context, regardless of whether there's a companion constitutional violation. In Constantine, you held that a student who had a migraine and was seeking extra time on a test had a valid ADA claim for damages because of the general history of discrimination against people with disabilities. The same, if not more, is true in the prison context. Schools provide students with housing, food, medical services. Prisons, too, provide their inmates with housing, food, and medical services. And the ADA damages remedy is congruent with the past history of discrimination against disabled prisoners. And that's in the congressional record for the passage of the ADA. And it's also proportional in the same way that it was proportional for the student in Constantine. Do you want to say anything about your RLUIPA claim? Thank you, Your Honor. If I could just turn to the RLUIPA claim. There's a couple of different issues. The district court held that there was no substantial burden on Mr. Richardson's sincerely held religious beliefs. He has a sincerely held religious belief that he has the sincerely held religious belief to wear a head covering at all times. He was denied the ability to wear a head covering at all times. That on its face is a substantial burden on his religious activity. I think this court can look to cases in this circuit. It can also look to Ali versus Stevens in the circuit where the facility had the exact same rule. You cannot wear a head covering in certain places in the facility. And there the Fifth Circuit said, well, we have to do the balancing test. We have to see what the compelling governmental interest is. Here it's a security interest, the same the defendants offer. And we have to determine whether that's the least restrictive means possible. So counsel, if I could interrupt, I'm sorry. I'm familiar with the cases and you've cited those. What the district court said was not that he didn't have a sincerely held belief, but that he hasn't put forth any evidence of a substantial burden. And if you assume substantial burden, then you get to, I think, those cases. But I think there's a first step of whether or not he has done that. And it seems like in your brief, you're kind of saying it's just obvious. And I'm just trying to get a sense of that. Is there something in the record where he has met the substantial burden? First of all, is there something where he has done more than allege it in his complaint? No, Your Honor. There's nothing in the record where he specifically has put forth facts. There is a declaration by one of defendants that recognizes that he has a sincerely held belief to wear a head covering at all times. But I do think that it is obvious. I think if someone's and there's a rule that says you cannot do that, then there's no other way to read that than a substantial burden on his religious beliefs. I think if he had a different religious belief that was, I have to wear a head covering in certain times or in certain places, that might be different. Or if the government's rule was more narrowly tailored and less restrictive, it was just searching head coverings, then this would be a different case. But his belief is, I have to wear it at all times. And their rule was that he cannot wear it in certain locations. If I could just briefly address the government's mootness argument, the district court held that this matter was not moot. And we agree with that. It's not moot because the defendants have made no showing that they won't simply just return back to the policy. And that's really the standard here of whether they've acknowledged the prior policy was unlawful and whether they will return to it in the future. If Mr. Richardson's claim here is mooted out, the defendants could immediately at their former policy because there's been no acknowledgment as to the illegality. So on that claim alone, this case should also move forward and be reversed and remanded. I see my time is up. Good morning, your honors. May it please the court. I'm Kevin Gallagher, Deputy Solicitor General of the Commonwealth of Virginia, representing Appalese. With me today is Annie Chang, Assistant Solicitor General. Although Mr. Richardson lodged almost a dozen complaints about six defendants related to his time at two different correctional facilities, this case has been whittled down to three issues before the court today. District court was correct in his rulings on all three and should be affirmed. First, the district court correctly granted summary judgment on Mr. Richardson's Verluppa claim. As the undisputed record evidence shows, in October 2020, the Department of Corrections changed its policy to allow inmates to wear head coverings anywhere inside their facility. That policy remains in place two years later, meaning that Mr. Richardson's Verluppa claim falls within both Verluppa's safe harbor provision and his move. And in any event, although Mr. Richardson alleged generally that he had a sincerely held religious belief regarding a head covering, he put no evidence in the record about how any policy at his facility imposed a substantial burden on his religious exercise. Counsel, on that point, I think there's a fair argument to that, but you didn't move for summary judgment on that basis. And so I'm a little torn, you know, that the district court certainly ruled on that basis, even though the defendants hadn't moved on that basis. So there was really no facts put forth in support of the motion for judgment or even an argument on regarding summary judgment about substantial burden. And Rule 59 or 56F says that certainly a district court can do that, but only is supposed to have notice and an opportunity to respond. So is Mr. Richardson in a bit of a bind when, you know, not wanting the basis of appeal, but still back at the trial court level, it seems like that puts him in a bit of a bind. What's your response to that? I have a few responses, Your Honor. I think, first of all, the district court did rule on that ground. And as you've said, and certainly is clear from this court's case law, this court can affirm on any grounds supported by the record. So that was certainly by the record in that the district court ruled on it that way. Number two is the burden is on Mr. Richardson in proving his So he had ample opportunity to put evidence in the record that this was a substantial burden. And I want to be clear about our position here. We are not challenging the sincerity of the religious belief. We conceded that at the motion to dismiss stage, and we also conceded it in the summary judgment briefing. But it is his burden to show that that sincerely held religious belief, which is articulated in the complaint as a belief generally about head coverings, that there is a policy that BDOC and the other police put into place that actually substantially burdens. That's his burden for sure. I'm not disagreeing. But if this if we're in a negligence case, and you move for summary judgment on breach of duty, and a district, you wouldn't, it wouldn't be normal or expected for a plaintiff to put forth evidence of damages in summary judgment. So obviously, at trial, you got to meet all the elements of your case. And it seems like that's what we have here. I understand. I think, first of all, the main grounds that the BDOC and the other defendants moved for summary judgment on is mootness, which I think also sort of goes to maybe why certain arguments were made or not made, because obviously, that's an article three issue. If this court were to write on that ground, there would be no need to get to the sort of next level question of the substantial burden. But I keep going back to it was his burden in order to move forward with his claim to show substantial burden. And there's just it, the case all is pretty clear. And my friend on the other side had been amply put that in his briefing, that is a decently low bar. I mean, there are cases that he cites where it's simple affidavit saying, I have a religious belief to wear my I mean, that often gets past the bar. And so, Mr. Richardson, and we'll talk about access to the courts, but I mean, he was submitting filings throughout the course of this proceeding, including the two declarations, two affidavits that are at issue for summary judgment stage. And in that process, he said nothing about the Ted company. He says things about the ADA claims, but he does not say anything about the policies in place. All that evidence comes from our side. And so, the district court, I think. Mr. Gallagher, I'm sorry. So, you're not conceding that he has a legitimate, sincere belief that he has to wear his headgear at all times? I want to be very clear about what our position is. Mr. Richardson, in his complaint, said that he has a sincerely held religious belief to wear a head covering to honor the when, and where, and how much they need to wear their head covering. And so, in the cases that the other side cites, there are people who, they're okay if they only wear it in religious observances, or only in certain areas of the facility, or they need to wear it at all times. We just don't know based on the record evidence. All we have is a simple allegation, not proof, or not evidence, an allegation that he has a sincerely held religious belief generally about head covering. We don't know in what locations he feels he needs to wear it, in what times. We have in the brief the other side saying that it is clear that he meant at all times. But it is certainly not in the record that it is at all times. So, if for whatever reason the record would show otherwise, and there's competent evidence that his religious beliefs require that he wear the headgear at all times, you would concede that that's a violation of our LUPA? We would say that that is very likely enough evidence to get past the substantial burden element. There are things that both sides need to show for a LUPA claim to go forward. The plaintiff needs to show a sincerely held religious belief, conceded that, and then a substantial burden, usually a low evidentiary bar, but still an evidentiary bar. Then it would flip to the other side for defendants to show compelling government interests, narrow tailored means, and things of that nature. We never got to that stage because the plaintiff didn't meet the bar to show the substantial burden. So, I would say if there were evidence in the record, which there's not, but if there were evidence in the record showing a substantial burden, then that would not necessarily establish the LUPA claim generally, but it would get to that next stage of flipping the burden to the defendants. Okay, and I'm sorry, and as to that, on mootness, what is to keep the Bureau of Prisons from simply reinstating the ban on head coverings after this litigation is over? There, the ability to change a policy certainly exists in the discretion of the Virginia Department of Corrections. That's in the Porter case, that's in the Wall case. However, in those cases, the Department of Corrections and the appellees or defendants in that in those cases were not willing to not go back to the policy. Here, the Virginia Department of Corrections has no intention to go back to the previous policy, and so that puts us in. Currently, they have no intention. You standing here today, you're saying they have no intention, but they still could. They retain the So there's a Article 3 mootness, which first of all, New York State Rifle, which came out after this court's decisions in Porter and Wall said, you know, as long as the plaintiff has gotten the precise relief they've asked for, then the case is moot. My friend on the other side would certainly say, well, there's still a voluntary cessation issue, and we would say that this case is different from Porter and Wall because of the intention to not return the fact that two years have passed and the policy remains the same. I think generally, we see the GEOC being more. Well, if the administration of the Bureau of Prisons changes, so could the policy. It would. It certainly remains in their discretion to change generally, but as I've said, and would reiterate, the Department of Corrections currently does not go forward with that or to change the keyword being currently. That's correct, and that's why then we have the separate argument of the RLUIPA safe harbor. So RLUIPA has a provision in 22 or 2000 CC-3E that says that by changing the policy or practice that results in a substantial burden, the government can avoid prospective injunctive relief. And so we have a situation in which the government did the exact thing that RLUIPA intends to incentivize them to do. A potential substantial burden was identified through the claim that Mr. Richardson and maybe other prisoners have brought, and VDOC took that into consideration, changed the policy, and the RLUIPA safe harbor provision says that they should able to avoid the injunctive relief that Mr. Richardson now seeks because that is exactly how the statute is laid out for them to do. And I would point this court to two cases. One is a Seventh Circuit case at 342 F-372 that applies that safe harbor provision in a zoning case, but obviously RLUIPA covers both. And then an unpublished but Tenth Circuit case, 528 Fed 838. And in both of those cases, the safe harbor provision was applied in sort of similar circumstances where even if there's a question about mootness and voluntary cessation, and even if this court thinks that for Article 3 purposes that mootness is not applicable, there is a separate analysis for the RLUIPA safe harbor which would not necessarily, which would not include that same voluntary cessation. Mr. Gallagher, I know you want to get to your ADA claim, but let me just go back to this issue of substantial burden for a moment. I was just going through the record, and you say that Mr. Richardson never presented evidence to show that he had a sincerely held belief that he needed to wear his religious headgear at all times in all places, but your report, hold on a second, signed by T. Williams, this is a JA-130, says, I understand that inmate Richardson claims that it is his sincere belief that he wear his cuffie or religious head covering in all areas of his headgear everywhere? I understand that that is what the affidavit says, however, I would point back to the fact that it is the burden of the plaintiff. Well, not if the other side concedes the point. But I think that the affidavit sort of is a separate issue about whether that point was conceded. It certainly was not conceded in any brief, and the district court did not consider it to be conceded. And so I would say that, again, with the district court ruling on that ground, it is certainly a live controversy about whether there's any evidence in the record. And I would repeat that the plaintiff did not put any, Mr. Richardson did not put any evidence in the record about that element. All right. I will now turn to the ADA claims. So the district court correctly granted summary judgment on Mr. Richardson's ADA and Rehabilitation Act claims, and for ease of reference, I'm just going to refer to them as the ADA claims because it's a similar analysis. Mr. Richardson contends that appellees prevented him from having meaningful access to the prison's law library and the courts, but the undisputed record evidence shows the opposite. So appellees, first of all, bent over backward to accommodate Mr. Richardson's access to the law library, even granting him computer access when it would normally not do so for inmates. And Mr. Richardson claims that appellees prevented him from accessing the courts, but the record here belies that, where he filed over a dozen filings between the time where he was not granted access to a personal caregiver and also to a certain time with ASL interpreters. Counsel, can I, I want to ask kind of a question that's different than the evidence in the record about whether there's been some discrimination under the act. Mr. Richardson says that because of the ruling on the motion to dismiss, he has been unable to develop evidence on the money damages claim. I'd asked if, you know, the record shows an absence of a claim, at least on the injunctive claim, that resolves effectively all the ADA claims. What's your position on that? I mean, assume I agree with you or we agree with you on the, you know, the accommodations or the, you know, failure to provide access. Does that resolve the money damages claim too? I think it does, your honor. So, for a couple reasons. First of all, Mr. Richardson put in the two affidavits into the record and they don't really distinguish between time at Deerfield and time at the other correctional facility. The district court had already dismissed claims about the previous time at the first facility, but Mr. Richardson was still entering evidence. He was operating pro se, but he was certainly out entering evidence about his time generally in correctional facilities. And so I think there's more than enough record evidence about the both going forward perspective relief claim, but also damages claim. And I would say that more generally, the ADA and Rehabilitation Act claims rest on this denial of access to the law. There's no denial of access to courts here because the record evidence, regardless of what was happening to Mr. Richardson on the ground, either before or after a certain time, throughout the course of this litigation, he was able to file things, you know, all over the record. The court in the district court had been asked to appoint him counsel because he was saying, I'm not able to do this case without counsel. The court said very clearly, the record lies that you are filing more than enough on the record. You can do this case by yourself. And so regardless of all the different aspects that Mr. Richardson would bring up, and he has sort of a litany of claims in or factual allegations in the complaint that weren't necessarily put into the record at summary judgment, none of those claims, none of those allegations would establish that he was not given access to the courts, that he was denied meaningful access to the courts. And so I think regardless of what the evidence would have shown and certainly what the evidence did show, there was no ADA violation as a matter of law. And I want to talk about the two claims that are actually in the record because there are things that are, you know, having ASL interpreters, American Sign Language interpreters in medical settings, there's no evidence in Mr. Richardson's affidavits about those. So the only two things that are actually in the record are that he was denied a caregiver in order to help him use the computer system and that he was denied more than five hours a week of ASL interpreters. I would point the court to his second affidavit, which is found in the record at 209 to 13. Those two sets of claims directly go to this area or this idea of access to the courts. He's saying that because I didn't have someone to help me navigate the computer and I didn't have more time with ASL interpreters, I was not able to put my filings in court. But again, the record certainly belies that. He had, from the time that he was said that he was not given that personal caregiver in August of 2020 until the case ended, he filed almost a dozen or over a dozen filings on the docket. And briefly, because I see my time is coming to a close here, I do want to talk about the sovereign immunity issue. And so I think there are, as my friend on the other side has identified, three steps of the analysis in the United States versus Georgia. You would look at whether there is conduct that's alleged to have violated Title II. And at the motion to dismiss stage, the court did not dismiss the Title II claim. And so we would say that that element has been met. The second element is then looking at whether there is conduct that actually violates the 14th Amendment. Mr. Richardson contends that because he labeled a claim as an Eighth Amendment claim in his complaint, that he has met that problem, that he can go forward sort of under the core holding of the United States versus Georgia, which is that if conduct actually violates the 14th Amendment, Title II is abrogated. He would say that all he has to do is put some factual allegations in his complaint and then slap a constitutional label to it, and that would get you past that bar. That is not the court's ruling in the United States v. Georgia. And I would point this court to Toledo v. Sanchez, which is at 454 F3rd 24 in the First Circuit, to sort of see how the analysis works, where the Title II claim and then what the allegations are for constitutional claims, how those interact. Then we would get to the third step, if for whatever reason, so if you agree with us about the not actually, nothing actually violates the 14th Amendment, then we get to the third step, which is, well, is abrogation under Title II nevertheless valid for this class of conduct? Mr. Richardson believes that because of this court's holding in Constantine, that that answers the question. However, the Supreme Court has told the lower courts to analyze the class of conduct at issue, and so the Constantine case is very particularly and very narrowly in the education context, which courts around the country have looked at and said that Title II does aggregate sovereign unity in the education context. But the district court didn't get to that third step, so if we were to agree with you that Constantine's education, this is different, and it's in, you know, you have the arguments incongruent, we'd be doing that in the first instance because we don't have at least a decision below on that, right? I actually don't think that's true, Your Honor. I think in the court's holding, the court laid out the analysis in United States versus Georgia, cited the court's opinion, the Eastern District of Virginia opinion in Chasey Basketball. So you think the citation of Chase is enough to say that he made, that the district court made a finding on congruence? I see my time is up. May I answer your question? Absolutely. Your Honor, I think that in, it was not just a citation, but it was a quotation saying that in the context of Title II that you can only show aggregation of sovereign immunity in the prison context because of, if his conduct actually violates the 14th Amendment. And the holding in Chasey Basketball is after a long analysis that the same judge, Judge Hudson, did about the prison context and why sovereign unity would not be aggregated in that context. And so, I mean, maybe on some level it's a correlation, but it is certainly referencing the main holding of that case, which after an analysis of this issue under the third prong, the city of Bernie test, after that analysis coming to the conclusion that it is not nevertheless valid in the prison context for sovereign immunity to be aggregated. So I do not think that this court would be doing new work here. It would merely be affirming the district court on the ground. What is it about if we agree with, well, I know you don't want us to get to the third step and look at Constantine, but what is it about the prison context that makes Constantine not applicable to this case? I think there's two main arguments as to why that's the case. In the prison context, there are a lot of services that are offered just as a means of grace, the phrase that's used in Chasey Basketball. So you think of TV access, computer access, things of that nature. The court in Chase makes the point that that would basically open up prison systems, which are already resource constrained. It would open up prison systems to liability for damages based on either not giving or limiting access to things like that, that have no bearing toward any sort of constitutional violation. One of the primary rights that we look at to see whether it's congruent and proportional to the constitutional right issue is the eighth amendment. And the eighth amendment has such a high bar that things down the line like not granting access to an ASL interpreter in a medical setting is so far afield from deliberate indifference to medical issues that there's not congruence and proportionality to it. And then secondly, generally, state prison systems are given a significant amount of deference and leeway in the court system by the courts. And I would point this court to Chase opinion again, which sort of has a litany of sites on that point. Generally, as opposed to the education context, the prison context is a situation in which the courts will give a decent amount of deference to the state correctional systems because they are much more in tune with the situation on the ground. And also, generally, they have more ability to sort of oversee their internal systems. Unless there are any further questions, we would ask the court to affirm the issue. All right. Thank you. Hello again, your honors. I'd just like to make a few points on the ADA claims and then a few points to clean up the discussion of the Arlupa claim. I want to address Judge Quattlebaum's question that you asked both me and my friend on the other side, as far as whether a resolution of the injunctive claims would address the ADA claims. I heard my friend on the other side say, as he must, that the Title II claim at the motion to dismiss, the district court did not dismiss the Title II claim by saying that the elements of the claim are not met. And for that reason alone, the Title II claim for damages should be remanded to determine whether or not there is evidence to fully prove up that claim. The district court dismissed the claim for the sovereign immunity reasons, not for substantive reasons. And it would be improper to import the evidence from summary judgment to then inform the motion to dismiss, which is on a different issue and different temporally. Mr. Richardson would be able to prove up more clearly when and how the facility denied him access to services retrospectively. That's a different thing to whether they're actually denying him services prospectively. As far as the citation to Chase v. Baskerville, I would just point this court to two things. First, a brief that notes that Chase v. Baskerville rests on shaky foundations. Chase cited Miller from the 11th Circuit, which was a pre-Georgia case. Miller was then abrogated by the 11th Circuit post-Georgia, understanding that its holding there was not correct. And so Chase is on shaky foundations to begin with. But other courts in this circuit in the districts of Virginia have held that Title II of the ADA does abrogate state sovereign immunity in the pretrial context. And there's no meaningful distinction for the purposes of ADA between the pretrial context and the post-conviction context. As to my friend's concerns about prison discretion, those discretionary concerns come in the period of litigation, not on the question of whether there should even be a claim at all. In fact, prison is probably the ideal place to put an ADA claim. Prisons are already subject to Title II for injunctive relief, which often entails much more strenuous activities on part of the prison. Changes in services, changes in architecture, changes in personnel. So damages doesn't really open up new liability. And there would still be the safeguards of the PLRA. Prisoners would still have to prove that they had exhausted the prison administration grievance process. They would still have to be screened out on a 1915A screening order. So all these safeguards make the prison context an ideal place for the ADA. Can I ask, before we turn to our lupa, so I asked this question earlier and Mr. Gallagher, I guess, responded to it. And this is the question of sort of the fact that the ADA claim seems to bleed over into a right of access to the court's claim. And Mr. Gallagher made the point, and maybe there's a factual dispute about this, that even without the interpreter services and the caregiver services that your client, Mr. Richardson, continued to file a flurry, as he put it, of documents in the docket, suggesting that, in fact, there was no prejudice with respect to the fact that he wasn't given the services. So, and I know your point is that the ADA requires meaningful access. You gave the example of a crawl up the stairs of a courthouse. But that's not this case, right? If, in fact, he continued unabated to file legal documents, doesn't that suggest that there really isn't an ADA claim? Two responses, Your Honor. First, just to clarify, and I think there's some confusion on this, and there's good reason for the confusion, but the service that he's being denied is not necessarily access to the courts, but access to the legal library, access to the services that the prison provides. Obviously, the prison doesn't necessarily provide access to the courts in and of itself, but provides all the mechanisms to access the courts. And as to whether he's been provided meaningful access, there is evidence in the record at JA 209 that Mr. Richardson has to ask other inmates for assistance, that he is able to file some court documents, but there's record evidence that it takes him, I think, 600, 800, sometimes 1,000 hours to go through court documents, much more strenuous if you're a non-disabled prisoner, or if you were given accommodations. And that's what meaningful access means. Of course, this isn't as extreme as the plaintiffs in the lane who have to crawl up the steps, but it is still a question of whether there's meaningful access. I really have some questions about RLUIPA, if you've finished with that answer before you ran out of time. What is your response to Mr. Gallagher's argument that appellant hasn't met his substantial burden, because there's no evidence in the record, he says, that appellant was, his sincerely held religious belief required him to wear the head covering at all times? May I answer? Yes. Well, there's two places, I think. First, this court should look at Mr. Richardson's particularized complaint, which not only says that he was denied, that he has a sincerely held religious belief to wear a head covering at all times in the facility, but then in the next paragraph says what the facility was doing to deny that. But then as far as record evidence, I would point to what Judge Diaz pointed to, which is their own statement that Mr. Williams understands that Richardson claims that he has sincerely held religious belief to wear a kufi, a religious head covering, in all areas of the facility. I think it flows logically that if it is your religious belief to wear a head covering in all areas, and there's a rule that he has pointed to in his particularized complaint that prevents him from wearing it in all areas, that means that his religious beliefs are substantially burdened. And all areas can include, as we mentioned in the brief, areas like the visitation area, areas like the dining hall. And then what's your response to his safe harbor argument on mootness? As to his safe harbor argument on mootness, I think the safe harbor provision needs to be read in conjunction with the standard. And so it's true that if the facility were to change the policy permanently going forward, that would also apply to the safe harbor provisions for ALUPA. But the mootness concerns are still there, that they could just switch the policy back at any point. I think this court's analysis in Wall demonstrates why that's such a danger, especially when it's difficult for pro se prison litigants to even file claims. The prison could just switch back and forth, and then the prisoner would have to go through the whole process of exhausting the remittance process and going through all these files. So why would you need, I'm sorry, why would you need a safe harbor provision in that case if the prison made a commitment that they would not go forward, ever change the policy? What's the point of the safe harbor? Your Honor, I don't see anything in the record, and perhaps my friend on the other side could point to it demonstrating that the prison had made the commitment. No, no, no. I agree with you. I don't think they did. But his point is that prospectively, with respect to injunctive relief, that's the whole purpose of the safe harbor policy. And then perhaps your client isn't entitled, any claim for damages might not be moot if there is such a claim under our LUPA. But going forward, the safe harbor provision prevents a court from entering injunctive relief. We just don't read the safe harbor provision as expanding that far beyond and limiting this court and Supreme Court's mootness doctrine in that way. Okay. All right. Thank you very much, counsel. Thank you both for your arguments here today. We appreciate the arguments presented. We typically would come down and engage you, but obviously we can't do that under the circumstances. But again, thanks very much for being here. Thank you.
judges: Albert Diaz, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.